# No. 12,713.

## Thompson et al. *v.* Beck, Receiver.

(21 P. [2d] 712)

Decided April 24, 1933.

Mr. Homer S. McMillin, Mr. Clarence L. Ireland, Mr. R. H. Blackman, for plaintiffs in error.

Mr. John S. Stidger, for defendant in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

The plaintiffs in error are stockholders of Midland Cereal Products Company, a Colorado corporation. That company was placed in the hands of the defendant in error, as its receiver, in May, 1921. In February, 1929, the plaintiffs in error, describing themselves as petitioners, appeared or intervened in the receivership action, prayed for the removal of the receiver, for an accounting and that the receiver be charged with losses said to have been suffered in the conduct of the business. In January, 1930, the receiver filed his final report, the petitioners filed objections thereto which were overruled, and the receiver discharged. Petitioners assign error both to the denial of their petition for the removal of the receiver and to the overruling of their objections to his final report. We have reviewed all the testimony on both hearings and will undertake to pass upon all material questions presented.

The record discloses no objection to the appointment of a receiver, and it is unquestioned that at the time of the appointment the company was heavily indebted and without cash or liquid assets to meet its pressing engagements. The order of appointment provided the receiver was to conduct the business as a going concern, and the receiver so conducted it until his discharge. Periodic reports were made to the court of the receiver's accounts and from time to time orders entered for the issuance of receiver's certificates. All told some $214,000 was received and disbursed, the greater part from operation of the business, some from the sale of capital assets and the balance from the sale of receiver's certificates.

From the inception of the receivership, efforts were made by the stockholders to put the company on its feet, and the receiver was very active on this behalf. Meetings of the stockholders were held and plans formulated to raise money to discharge the claims against the company.

A committee of the stockholders, among them the receiver, was appointed. One proposal that the stockholders subscribing to the fund should be given first mortgage notes for their contributions failed for lack of sufficient subscriptions to pay the company's debts. The receiver persisted, however, as did the petitioners and many other stockholders, and finally in October, 1928, the company's property was sold under order of the court to a trustee for the subscribing stockholders for $110,000, who in turn conveyed and assigned the property to a newly organized corporation. Under this plan the subscribing stockholders received mortgage bonds of the new company for the amount of their subscriptions, the receiver agreed to take the balance of fees allowed him in like bonds, and all stockholders received stock in the new company in the same proportion as their holdings in the old company. The sale was approved by the court on October 26, 1928, and a direct conveyance to the new company ordered, whereunder the new company went into and has continued in possession. The petition, filed in February, 1929, for the removal of the receiver prayed also that the sale be set aside.

██ ██ The petition and the objections to the receiver's discharge contain many imputations of fraud. It is charged that the receiver continued the receivership chiefly for his own benefit and that he had misled the petitioners by representations that the business was proving profitable or would become profitable. But these charges fail for several reasons. They are not pleaded with that definiteness and certainty with which fraud must be asserted; inferences and conclusions of the petitioners cannot be substituted for allegations of fact which if proved constitute fraud. The proof failed, for the record does not disclose sufficient testimony to warrant the finding that fraud had been practiced. Indeed, one witness, who admitted that he had been chiefly instrumental in raising the funds to prosecute the petition, testified that he knew of no misconduct on the receiver's

part or of any misappropriation of funds. And the trial court, who heard the testimony and saw the witnesses, found that there had been no fraud on the part of the receiver or in the conduct of the receivership or the sale. We are not at liberty to say that the trial judge was wrong.

We are not to be understood to approve the receivership or the conduct of the receiver. It seems unconscionable that the receivership should have lasted for nearly eight years when the only proper purpose of such proceedings was to provide a speedy determination of the affairs of the vexed corporation. But the court should not be blamed for the situation presented by this record. The stockholders shared the favorable anticipations of the receiver that the plans proposed were feasible and voluntarily contributed additional funds to the failed or failing concern. One of the petitioners as late as 1927 made a substantial payment to aid in the plan then under consideration. The other petitioner attended the sale made in October, 1928, of which he now bitterly complains, and made no protest. Throughout the many years in which the matter was before the district court the petitioners participated in the meetings called to consider plans of reorganization, conferred with the receiver many times, and, with other stockholders, not only tolerated the continuance of the receivership, but sought its continuance. Under such circumstances we can only hold, and we do, that the petitioners are estopped now to complain of that in which they acquiesced. The petitioners did not resist the appointment of the receiver; they made no objection to the business being conducted by him as a going concern; they have shown no fraud; and there is no satisfactory proof of gross or any inadequacy of the price realized from the sale of assets. That their conduct amounts to laches is fortified by consideration of rule 18 of this court, for under that rule they had opportunity for years to seek the receiver's discharge and have review here if the trial court should refuse their request.

The conditions disclosed by this record emphasize the wisdom of Mr. Justice Campbell's observations in *International Trust Co. v. United Coal Co.*, 27 Colo. 246, 266, 60 Pac. 621:

"While we are mindful of the many perplexing questions which arose in this case, and though the intention of the trial court was to deal justly by these parties, and every endeavor was put forth to bring order out of chaos and make the business a paying one, nevertheless the results are the strongest arguments against such attempts by courts of equity to conduct the business of an ordinary private corporation in which the corporation itself has signally failed. It is but another unfortunate experiment unwisely undertaken by a court of equity to do that which business men are unable themselves to successfully accomplish, * * *." History has repeated itself and the petitioners now know from experience that which they could have learned from observation.

The record reveals no reversible error and the judgment is affirmed.

MR. JUSTICE CAMPBELL dissents.